UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELVIN LEBRON,

                        Petitioner,

          v.
                                              9:15-CV-0829
                                              (GLS)
ANTHONY J. ANNUCCI,

                        Respondent.
_____

APPEARANCES:                                OF COUNSEL:

FOR THE PETITIONER:

ELVIN LeBRON
Petitioner, Pro Se
64972-054
Lewisburg U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 1000
Lewisburg, PA 17838

FOR THE RESPONDENT:

HON. ERIC T. SCHNEIDERMAN          THOMAS B. LITSKY
Attorney for Respondent                   Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, NY 10271

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

    Petitioner *pro se* Elvin LeBron filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, dated July 8, 2015. Dkt. No. 1, Petition ("Pet.").[1] On October 5, 2015, petitioner filed, and the Court accepted, a Supplement to the Petition. Dkt. No. 11, Supplement to Petition ("Supp. Pet."). Petitioner was convicted of federal crimes while he was on parole for a prior state conviction. After petitioner pleaded guilty in federal court, respondent issued a parole violation warrant to the Federal Bureau of Prisons. Petitioner alleges he was entitled to a hearing after the warrant was issued and that his due process rights were violated when he was not afforded a speedy hearing. Pet. at 2-3, 7-9. Respondent opposes the petition. Dkt. No. 13, Answer; Dkt. No. 12, Memorandum of Law Supporting Response to Petition for Writ of Habeas Corpus ("Resp. Mem."); Dkt. No. 14, State Court Records (SR).[2] Petitioner filed a Reply. Dkt. No. 15, Reply.

For the reasons that follow, the petition is denied and dismissed.

## II. BACKGROUND

In 1994, petitioner plead guilty in Supreme Court, New York County, to the crimes of Manslaughter in the First Degree, Robbery in the First Degree, and Criminal Possession of a Weapon in the Third Degree. *See People v. LeBron*, 238 A.D.2d 150 (1st Dep't 1997). At that time, he was sentenced to an indeterminate prison term of eleven to twenty-two years on the robbery conviction, and lesser, concurrent sentences on the remaining convictions. *Id.* The Appellate Division, First Department, unanimously affirmed the judgment of conviction, and the New York State Court of Appeals denied petitioner's application for leave to appeal.

---

[1] The cited page numbers for the petition refer to those generated by the court's electronic filing system (ECF).

[2] The cited page numbers for the Answer (Dkt. No. 13), Respondent's Memorandum of Law (Dkt. No. 12), and Petitioner's Reply (Dkt. No. 15) refer to those generated by ECF. The "SR" page numbers for the state court records filed at Docket Number 14 appear at the top center of each page.

2

*LeBron*, 238 A.D.3d 150, *lv. denied*, 90 N.Y.2d 895 (1997).

On October 23, 2009, petitioner was conditionally released from prison to parole supervision by the New York State Department of Correctional Services (DOCS). SR 31-32; *LeBron v. Graham*, No. 9:09-CV-1021 (GLS), 2010 WL 2771878, at * 1.[3]

On April 13, 2011, petitioner was arrested on federal criminal charges while on parole. A Violation of Release Report, dated May 12, 2011, was submitted to the New York State Parole Board as a result of petitioner's arrest. SR 33-35, 38. Petitioner subsequently pleaded guilty and was convicted in the Southern District of New York of Conspiracy to Distribute and Possession with Intent to Distribute Crack, *see* 21 U.S.C. § 846. *Id.* at 42-43. Petitioner was sentenced to seventy months in prison and is currently in the custody of the United States Bureau of Prisons, and housed at the United States Penitentiary in Lewisburg, Pennsylvania. *Id.* Petitioner's projected release date is May 11, 2016. *Id.* at 36.

On April 10, 2013, the New York State Parole Board held that, as a result of his federal conviction, petitioner was delinquent with regards to the conditions of his parole dating back to his arrest on April 13, 2011. *Id.* at 39. On April 11, 2013, DOCS issued Parole Warrant No. 64280 at the federal prison where petitioner was incarcerated. *Id.* at 49. Petitioner requested DOCS vacate the warrant, which was denied on June 19, 2014. *Id.* at 9. Petitioner was informed that he would be brought back to New York pursuant to the warrant filed with the Federal Bureau of Prisons after he was released from federal custody and, at that time, a parole revocation hearing would be held. *Id.*

---

[3] Petitioner previously filed a habeas petition on September 4, 2009, asserting claims that his parole applications were wrongfully denied. *LeBron,* 2010 WL 2771878, at *1. The petition was dismissed as moot because petitioner was conditionally released on parole at the time of the court's decision. *Id.*

3

Petitioner then brought a New York CPLR Article 78 Petition in the Supreme Court, Albany County, on September 9, 2014. *Id.* at 1-9. Petitioner challenged DOCS June 19, 2014 decision which denied his request to vacate the parole warrant. Petitioner maintained he was denied his right to due process and equal protection because he did not receive a speedy parole hearing after DOCS issued the parole violation warrant. *Id.*

In a Decision and Order, dated February 23, 2015, Supreme Court denied the Article 78 petition. *Id.* at 52-56. Specifically, Supreme Court found that, pursuant to New York Executive Law § 259-i(3)(a)(iii), where the alleged parole violator is detained in another state pursuant to a parole warrant, the warrant "will not be deemed to be executed until the alleged violator is detained exclusively on the basis of such warrant." *Id.* at 54. Accordingly, Supreme Court concluded that DOCS "had no obligation to conduct a parole violation hearing while the petitioner was incarcerated in a federal prison in another state." *Id.* at 55.

DOCS served petitioner a copy of the Supreme Court Decision and Order on March 16, 2015, with notice of entry. *Id.* at 51-57. On May 17, 2015, petitioner filed a motion in the Appellate Division, Third Department, requesting an extension of time to appeal. *Id.* at 58-71. The Appellate Division denied petitioner's request in an Order dated July 30, 2015. *Id.* at 72.

Petitioner then sought leave to appeal to the Court of Appeals. *Id.* at 95-96. Respondent opposed the motion. *Id.* at 97-98. On November 24, 2015, the Court of Appeals dismissed petitioner's motion for leave to appeal on the ground that the order sought to be appealed from was not a final order determining the proceedings and therefore was not appealable. *LeBron v. Annucci*, 26 N.Y.3d 1058 (2015).

4

### III. DISCUSSION

#### A. Exhaustion and Procedural Bar

Petitioner argues his constitutional right to due process was violated because he did not receive a speedy parole hearing after DOCS issued the parole violation warrant with the Federal Bureau of Prisons. Pet. at 7-9. Petitioner's claim, however, is not exhausted.

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court. 28 U.S.C.A. § 2254(b). This requirement is not satisfied unless each federal claim is "fairly presented" to the state courts. 28 U.S.C. § 2254(b), (c); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that a petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim").

A petitioner seeking habeas review of his parole revocation is subject to the exhaustion doctrine. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2003) (finding a state prisoner challenging his parole revocation must bring a habeas proceeding pursuant to section 2254); *McQueen v. Superintendent, Franklin Corr. Facility*, No. 9:15-CV-77 (JKS), 2015 WL 6449138, at *4 (N.D.N.Y. Oct. 23, 2015) ("Like petitions challenging criminal convictions, habeas petitions addressing parole revocations are subject to the aforementioned exhaustion requirements").

"To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78." *Johnson v. Carlsen*, No. 9:09-CV-66

5

(GTS/DRH), 2010 WL 1817343, at *2 (N.D.N.Y. Mar. 29, 2010) (internal quotation marks omitted); *McCullough v. NYS Div. of Parole*, No. 9:11-CV-1112 (DNH/DEP), 2015 WL 2340784, at *4 (N.D.N.Y. Apr. 15, 2015) ("The typical path for exhausting a claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a CPLR Article 78 proceeding"). "If the Article 78 petition is denied, the petitioner must appeal that denial to the 'highest state court capable of reviewing it.'" *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)).

Here, although petitioner filed an Article 78 proceeding in state court, he did not timely appeal Supreme Court's denial of his Article 78 petition to the highest court capable of reviewing it. Pursuant to Section 5513(a) of New York's Civil Practice Laws and Rules, an appeal in state court "must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry." Respondent served petitioner a copy of Supreme Court's decision denying his Article 78 petition on March 16, 2015, with notice of entry. SR at 100-06. Petitioner did not file a notice of appeal within thirty days, but instead waited sixty-two days until May 17, 2015, to request an extension of time to take an appeal. *Id.* at 58-71. The Appellate Division denied petitioner's request for an extension of time to appeal, (*id.* at 72), and the Court of Appeals concluded it could not review the Appellate Division's order because the order did "not finally determine the proceeding within the meaning of the Constitution." *Lebron v. Annucci*, 26 N.Y.3d at 1058. Accordingly, petitioner's claims are unexhausted because the state

6

appellate courts have not reviewed petitioner's claims on the merits.

Petitioner's claims may be deemed exhausted however, because petitioner no longer has a remaining avenue to raise the claims in state court due to his procedural default. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile"). The dismissal of petitioner's Article 78 proceeding was subject to an appeal to the Appellate Division, and an application for leave to appeal to the Court of Appeals. Because the time to appeal has long since past, and petitioner is now foreclosed from pursuing such appeals in state court, the Court deems petitioner's instant claims exhausted, but procedurally defaulted.

A procedural default does not automatically bar a petitioner from habeas relief if the petitioner can show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal citation omitted). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice

7

are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner's only attempt to show cause is claiming that all his "personal property was packed for forwarding" to the prison where he now resides near the time that Supreme Court dismissed his Article 78 petition, and that he did not receive these personal items back until after the time to appeal had passed. Reply at 3-4. According to petitioner, he also did not have "at will access" to the prison's law library computers, and did not otherwise have "access to state law." *Id.* at 4.

These contentions are insufficient to establish "cause." Petitioner does not indicate how his lack of "at will access" to the law library computers prevented him from timely filing a notice of appeal. Nor does petitioner identify what materials were transferred, or how his inability to access the packed materials impeded him from filing a timely notice of appeal. Furthermore, respondent served Supreme Court's decision dismissing his Article 78 petition on March 16, 2015, ten days before he was transferred to another facility on March 26, 2015. SR at 100-06; Reply at 2. Petitioner provides no explanation for why he could not file a notice of appeal during that ten-day period after he received the Supreme Court's decision. As such, petitioner has not demonstrated cause for his default, and the Court need not consider whether petitioner demonstrated prejudice. *See Murray v. Carrier*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d at 45.

Finally, petitioner does not allege "actual innocence;" therefore, this Court's decision to not review his claims will not result in a miscarriage of justice. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal quotation omitted) ("The miscarriage of justice exception is

8

concerned with actual as compared to legal innocence"). Petitioner has not presented any new evidence that he is actually innocent, or that the failure to review his claim would result in a fundamental miscarriage of justice. *House,* 547 U.S. at 536-39; *Schlup,* 513 U.S. at 327. Accordingly, petitioner's claims that he was denied due process because he did not receive a speedy parole hearing are procedurally barred from habeas review. Nevertheless, out of an abundance of caution, the Court has reviewed the merits of the petition and, for the reasons that follow, finds them lacking.

## B. Standard of Review on the Merits

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e

Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).

**C.     Due Process Claim**

Petitioner maintains that his constitutional due process rights were violated because

10

he was not afforded a speedy parole revocation hearing after DOCS issued a parole violation warrant to the Federal Bureau of Prisons. Dkt. No. 1, Pet. at 7-9.

It is well settled that "the constitutional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards." *Moody v. Daggett*, 429 U.S. 78, 85-86 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). Among the due process rights afforded is "the right to a hearing at which the court determines two issues: whether the [parolee] violated a condition of [parole] as a matter of fact and, if so, whether this fact warrants revocation." *United States v. Jetter*, 577 F. App'x 5, 7 (2d Cir. 2014) (quoting *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000)). Due process also requires that a person accused of violating parole must receive a revocation hearing "within a reasonable time after [the person] is taken into custody." *Morrissey*, 408 U.S. at 488.

In *Moody v. Daggett*, 429 U.S. 78 (1976), the Supreme Court held that the revocation hearing mandated in *Morrissey* "is required only after the person charged with violating parole is taken into custody for the parole violation, and that the issuance of a warrant and the lodging of a detainer, while the person is incarcerated elsewhere for a separate crime, do not constitute being taken into custody." *United States v. Wall*, 208 F.3d 204, *2 (2d Cir. 2000) (citing *Moody*, 429 U.S. at 86-87). Simply stated, "it is the *execution* of the warrant, after termination of the intervening sentence, that takes the person into custody for the parole violation and triggers the obligation for a *Morrissey* hearing." *Id.* (citing *Moody*, 429 U.S. at 89) (emphasis in original); *United States v. Ramos*, 401 F.3d 111, 115 (2d Cir. 2005) ("After an arrest warrant for a parolee or releasee has been issued on the basis of his or her parole

11

or supervised release violation, there is 'no constitutional duty to provide [the parolee] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant.'") (quoting *Moody*, 429 U.S. at 89.); *Jetter*, 577 F. App'x at *7 ("The Supreme Court has held that 'execution of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation.'") (quoting *Moody*, 429 U.S. at 87).

In New York, when a parole violation warrant is executed, DOCS must provide the alleged parole violator a preliminary revocation hearing within fifteen (15) days. *See* Executive Law § 259-i(3)(c)(I). However, where an alleged parole violator is "detained in another state pursuant to such warrant . . . the warrant will not be deemed executed until the alleged violator is detained exclusively on the basis of such warrant and the department has received notification that the alleged violation (A) formally waived extradition to this state or (B) has been ordered extradited to this state pursuant to a judicial determination." Executive Law § 259-i(3)(a)(iii). In other words, the warrant is only "deemed to be executed" once the violator is within the control of DOCS. *Id.* Accordingly, when DOCS "lodges a detainer against an alleged violator in an out-of-state facility, the 15-day period is not triggered until the individual has completed the out-of-state sentence and is available for extradition." *People ex rel. Matthews v. New York State Div. of Parole,* 95 N.Y.2d 640, 645 (2001).

Here, petitioner was on parole when he was arrested on federal criminal charges in 2011. After petitioner pleaded guilty and was convicted of certain charges in the Southern District of New York, DOCS issued a parole violation warrant in 2013 to the Federal Bureau of Prisons. Since petitioner has not completed his federal sentence yet, the parole violation warrant has not been executed. Petitioner is not being detained in federal prison pursuant to

12

the parole violation warrant, and therefore, the right to a *Morrissey* hearing has not been triggered. *See* Executive Law § 259-i(3)(a)(iii); *see also United States v. Wall,* 208 F.3d at *2 (holding that the lapse of time between the issuance of the federal warrant in 1992 and its execution in 1998 was "of no constitutional significance" because it is the execution of the warrant after termination of the intervening sentence that takes the person into custody and triggers the due process rights to a hearing).

To the extent that petitioner argues he is now subject to "higher federal security housing" and cannot participate in "Federal half-way house early release placement" as a result of issuance of the parole violation warrant, the claim fails. Pet. at 9. The petitioner in *Moody* raised a similar claim, arguing that a detainer issued in connection with his parole revocation adversely affected his prison classification and ability to qualify for certain programs. *Moody*, 429 U.S. at 88. The Supreme Court held that prison officials have discretion in controlling the conditions of confinement and that the petitioner had "no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Id.* at 88, n.9. Accordingly, that petitioner is now subject to higher federal security housing classifications as a result of the issuance of a parole violation warrant does not set forth a constitutional due process claim. *Id.*

Finally, to the extent petitioner contends his "New York State Constitutional right to a timely and speedy hearing, as required by the due process and equal protection clauses of New York State" were violated, (Pet. at 8), or that his parole revocation warrant should be vacated as "void" because his state sentence was set to end in September 2015, (Supp. Pet. at 1), the Court finds such claims are not cognizable on habeas review. *see Estelle v.*

13

*McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). As the Second Circuit has concluded, "it is not the province of a federal habeas court to reexamine . . . determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id. at* 67-68; *see Gittens v. Thomas*, No. 7:02-CV-9435, 2003 WL 21277151, at *2 (S.D.N.Y. May 30, 2003) (finding the petitioner's claim that the parole board did not properly apply state law did not present a federal question subject to habeas review).

In sum, the Court finds petitioner's claims are exhausted but procedurally defaulted, and otherwise lack merit or are not cognizable on habeas review. The petition is therefore denied and dismissed.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) and supplemental petition (Dkt. No. 11) are **DENIED AND DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability (COA) shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires.[4] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).

14

accordance with the Local Rules.

**IT IS SO ORDERED**.

April 4, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge